Good morning. Good morning. Good morning panel. My name's Terry Buehler. I'm here on behalf of... I can't hear you. My name... excuse me, I'm fighting a cold or something. I'll try and keep my voice up this morning. My name is Terry Buehler. I am one of the attorneys representing the plaintiff, Mr. Kerbes, with me this morning in court is my co-counsel, Mr. John Downing. I'm presenting the argument for the appellant and I would like to reserve four minutes for rebuttal. Good morning, Your Honor. My name is Teresa Davis. I'm with the law firm of Loeb & Loeb and I represent the appellant, Raceway Associates, LLC. I'm here Thank you. May it please the Court. There is one issue that this case raises for this Court to decide and that is can a company permanently change its work week to avoid or reduce paying overtime legally or does that action violate the law because it evades the overtime laws? Stated another way, if a work week change only applies prospectively, can it ever be a scheme to avoid the overtime laws or is it always legal? The defendant, Raceway Associates, in this case, changed the plaintiff's work week. The change was apparently permanent and it allegedly applied equally to all the employees. The lower court found that the change was made to reduce or eliminate the defendant's overtime obligations and dismissed the case. So I say again, does this change in the work week violate the overtime law because it took away Mr. Kerbes' ability to earn overtime or is it permitted, you know, is it always okay as a matter of law? Mr. Kerbes worked as a part-time security guard at one of the defendant's Illinois racetracks starting in 2002. The defendant bought the track in 2007. Is my voice okay? Yes. Thank you. The defendant sponsors racing events for car races. These events run from Thursday through Sunday and they do not occur every part-time security people to provide security during that four-day racing event. These security people will routinely work between 60 and 80 hours in that four-day period. From sometime prior to 2002, and I cannot tell this court when it started, until either 2007 or 2008, Mr. Kerbes worked and earned overtime in these racing events. Well, Koss, are you arguing that an employer doesn't have the right to change the work week as long as it is consistent, he's consistent with what that change has been made to? In other words, you know, does the employer not have the right? If it was Monday through Sunday and then he decided to change it to Tuesday through Monday, doesn't he have the right to do that? Absolutely, Judge. He absolutely has the right to change the work week. And this was a new employer, is that correct? A new owner of the track? New owner, that is also correct. Exactly. So there was a way of doing it the old way and then the new people came in, found a more economical way of doing it. What's wrong with that? I think it runs afoul of the policy for which the overtime statutes were written. The policy behind it is bring economic pressure on the employer to hire more people. For example, an employer in this case has a choice of hiring two employees to each work 40 hours a week, pay them all straight time, or hire one employee to work 80 hours a week and pay that employee 40 hours of time and a half. So the overtime laws were written in large part to bring economic pressure on employers to hire more people. And in this instance, I would say to the court that the change that we're talking about frustrates that policy. The difficulty we all have in this case, in my view, as I was getting ready for the argument this morning, plaintiff, defendant, and the court, is that there is virtually no law that I could find or the defendant could find that discussed the impact of a change in the work week on an employee's ability to earn overtime, you know, going prospectively. The five cases that the defendant has relied on in the lower court and has relied on in this court, none of them involve a change in the work week. So I would say again to the court, yes, you can set a work week however you like it, and no work employees do not have the right to have their right to overtime maximized. But what they do have is they have a right to earn overtime in the event that the... If it's available. I'm sorry? If it is available. If it is available, but... And your argument about the purpose of the overtime law was to allow more people to be It seemed to me that previously, the same people were working a large number of overtime hours, and new people were not able to come in and work those hours. It seems just contrary to what you're arguing. Well, I would respectfully disagree, Judge. They have not created an incentive to hire more people. The same 800 security people are going to work these long hours where, in fact, if the defendant was told this is an illegal scheme because you're abating overtime, rather than have 800 people, they might have to hire 1,200 people or 1,600 people to keep everybody's hours down according to the old work week and pay them all straight time, no overtime. So I would respectfully disagree with the court's... You said that the new scheme, they would be hiring 1,200 people, and the old one, they had 800. Right. And you say that the overtime law, I believe I wrote it down, you said, was to bring pressure to hire more people. Right. So the effect of the new scheme is to hire more people. Therefore, why is it not in adherence with the overtime law? Well, and I apologize for the disconnect we're having here, but it would seem to me that if Mr. Curbs was working eight hours under the old scheme, 80 hours under the old scheme, and earning 40 hours of overtime, the employer, the defendant here, would be motivated to hire Mr. Curbs and somebody else to split that 80 hours into two employees. What they have done is they have accomplished the same thing by splitting the work week, which I think is, rather than encourage them to hire new people, it encouraged them to avoid paying overtime so they didn't have to hire new people. But the gist of your complaint is that the class you are alleging to represent were not going to be able to earn the overtime that they previously did. That's right, Your Honor. And there's nothing in your complaint about hiring policies or what was the impact of that change as far as that goes? And we were not permitted to take discovery. I have no idea what kind of change was made. But the policy underneath, you know, that underlies the overtime statutes in the first place was really developed when we were briefing the motion to dismiss. Mr. Curbs came to us, we did the research, and, you know, it seemed to me on its face that 29 CFR 105 on its face would make this scheme, scheme is a bad word, would make this change illegal. You know, that section or that regulation says, quote, the beginning of the work week may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. And I would say to the court that is exactly what this was intended to do, to evade the overtime requirements of the Act. By making this change, the company went from paying overtime whenever anybody worked over 40 to never paying any overtime. And I guess the real question But hiring other people. That's right. Hiring more people. That would solve the problem. Well, what do they do? If these people have to work 80 hours to get the job done in a given period of time, and it takes, instead of having one person do it, you have two people doing it, each working 40 and 40, where's the violation of anything? I don't understand. That's exactly my point, Judge. That's what the overtime laws are designed to encourage, and that's what they're evading here. Well, how are they evading it? Because the guy's still working 80 hours, it's just being divided into 40 and 40. No, no, no. I got another, I view it differently. I view it with the fact that they're going to hire two people, one person working 40 and another person working 40. And I think that would solve my, you know, I think that would be consistent with the law and would Well, I think what you're saying is the employee gets to run the show, and that's not the case, is it? It's the employer who decides what the work week is, and as long as that work week is, what is it, seven days at X number of hours a day, it can be the same. And he didn't violate that, did he? Well, I think he did when he changed it, Judge. I guess the question for the Court is, if you change the work week, is it only a violation of the overtime statutes if that change is applied to work that's already been done, or can it ever apply prospectively? Because if the Court is of the mind that if a prospective change is always legal, then you should rule against me. I mean, that's, I think that in a nutshell is the case. But we're just dealing with this particular change. Right. Right. But the lower court ruled as a matter of law that any prospective, any change to the schedule that only affected work prospectively was permissible under the overtime laws. And I would disagree. So for those reasons, I mean, I don't know what my time looks like, but for those reasons, I would tell the Court, there's really not a lot to be said here. It either does or doesn't apply prospectively. You know, they made the change, the plaintiff had been working there for five years making overtime. They made the change, he lost the ability to work for overtime, and they had no incentive to hire a new set of people. And perhaps, you know, that is more important or felt more to a greater degree today because, you know, we just now got unemployment down to 9%. I saw we picked up 80,000 jobs last month. One other question I wanted to ask you. Sure. Even if the employer's only reason for changing the work schedule was to allow a savings to itself, what's improper about that, especially during these economic times? Or even though, especially then, that was what... Well, and this is where I parted company with the lower court. If it's doing that just to save money, it's frustrating the purpose of the overtime statutes because it could save the same money by hiring more people. The decision it has made is not to hire more people, but to rejigger the work week to avoid paying overtime. It's sort of like... This is at variance with the federal cases, correct? That's the International Association of Firefighters. And also it's at variance with that Lamont v. City of Shawnee, you know, which cites too that City of Rome case. Both of them looked at this issue and they said, well, what's improper about an employer saving money, even if that is the reason that he changed his work week, was to save money? Where is the error? Respectfully, if they're saving money by changing the work week rather than hiring more people, I think it runs apollo of the law. Where does it say that? 29 CFR 105. That law says that? Yes, it's... What part of that law said that? Well, the beginning of the work week may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the act. So we come back to where we were a few minutes ago. Are you saying that it is not possible for an individual to get overtime even under this new work week? Well, certainly not for these security guys because they don't run race events on consecutive weekends. There's like 16 or 18 of them a year, I think. Something like that. So you're saying that if this was a business other than the one that this employer was in, that it could be... It's not generally applicable to any employer. It's just the peculiar way that races are run that has the effect of denying the individual overtime. Yeah, I think this is sort of an oddball case, Judge, because you have part-time people working very long hours sporadically. You know, it may well be that catering companies would fall into this group, too. I didn't make the study of that. But I do think that's why there are so few cases that have considered anything close to this issue. It's just a strange situation. Thank you, counsel. Anything else? I may just have a procedural question that I hope won't count against your time. What happened on the final dismissal order with prejudice? Oh, on the amendment complaint? It appears that it was... Your opposing side is stating that it was a voluntary dismissal? For this reason, Judge, we had filed an amended complaint seeking overtime for the limited period that we believe the change was made, and we believe it was applied to a time that had already been worked. But if you took that claim against the whole, it was so small, and it was going to take so much time, that we discussed it with our client and decided that for the few dollars that we were really talking about there, we would simply dismiss that so that we could bring the more significant matter before this court. So it was a voluntary dismissal, but it was with prejudice. Is that correct? Yes. As to that claim. That's right. Okay. Thank you. Thank you. Thank you, counsel. As to... I'm sorry. As to what claim? We had raised a new claim that simply sought relief for the one-pay period before the change was made. We believe, according to our client and his records, that they had applied the workweek change to work that had already been performed. Okay. But the whole suit was dismissed with prejudice. Is that correct? Right. Right. The claim that we're talking about this morning was dismissed with prejudice. In the first hearing, we asked relief to plead that small claim that I've just described. We did so and later decided it was going to be a disputed issue, and it was insignificant. We thought we would serve our people better by moving forward with the larger claim. All right. Thank you, counsel. Thank you. We'll have brief rebuttal. Counsel? Ms. Davis? Good morning, Your Honors. May it please the Court, as counsel stated at the beginning of his argument, there is just a sole question involved here. To briefly address your procedural question, that's exactly what had occurred. In the original complaint, they had made the more global claim that an employee or an employer could not make a permanent change in the beginning of a workweek if that change had the effect of limiting the amount of overtime that an employee potentially may earn in that new workweek. Excuse me, counsel. You didn't introduce your co-counsel. For the record. Oh, Ms. Simone-Jones. I introduced her at the beginning. I'm sorry. I'm sorry. I missed that. Go on. And so that is the one question that was in the original complaint, whether or not the employer could permanently change the workweek if it had the effect of limiting or potentially limiting the amount of overtime compensation an employee could earn during the new workweek. Counsel had raised the issue during oral argument as to whether or not during that time period where the workweek was changed in 2007, whether his client and potentially some others had worked some time under the old workweek for which they had not been compensated in the process of changing it to the new workweek. That claim was not asserted in the original complaint. It was rephrased from this occurring in 2007, June of 2007, to it occurring in June of 2008 in the amended complaint. We moved to dismiss the amended complaint and counsel decided to voluntarily dismiss that claim. So the claim as to any potentially earned but unpaid overtime under the old workweek is not before the court today in our opinion. And so, again, the sole question presented in the complaint that's before the court is whether or not that change to the workweek, as long as it's permanent and is intended to be permanent, whether or not the effect of that change might be prohibitive and violative of the Illinois Wage Payment and Collection Act and its federal counterpart, the Fair Labor Standards Act. The lower court, as a matter of law, and as we believe correctly held, that the plaintiff's theory is not supported by either state or federal wage and hours laws. It's our contention, Your Honor, that the intent of the employer in changing the workweek is not a relevant consideration until the plaintiff has shown that the overtime requirements of the law have been violated. Those are two different things. Overtime requirements are very different from an employee's ability to earn overtime compensation. There's no requirement that an employer must maximize the amount of time that an employee may be able to earn overtime. There's no requirement that an employer structure the workweek so that the most possible overtime may potentially be earned by any employee. As long as that workweek change is intended to be permanent and in changing that workweek, they haven't... What do you consider to be an overtime requirement, counsel? There are several overtime requirements, Your Honor, that are listed in the Department of Labor guidance regarding the Act. Those requirements include that if an employee does, in fact, work more than 40 hours in the established workweek, they must be paid and they must be timely paid for that overtime at a rate of 1.5. So then if the employer makes it impossible for anyone to work more than 40 hours by cutting up the week according to... No, I don't think it is, Your Honor, because I don't think that there is any overtime requirement that requires an employer to offer overtime. It only requires the employer to pay the overtime if it is, in fact, earned. So case in point, Your Honor... If they make it so that it is impossible to be earned, is that not another way of getting around the statute? I don't think so, Your Honor. I think that's exactly what the statute was designed to accommodate, that employers make a workweek, establish a workweek, wherein their employees are not forced to work more than 40 hours, are able to work in a seven-day period, a 40-day period, and have a life outside work. Whether that seven-day period is Friday to Thursday, Saturday to Friday, whatever it might be, it's seven days. The cases where I think... Counsel, I used to be a civil rights lawyer and there was a distinction made between discriminatory intent and discriminatory impact or effect. Is this not analogous to that? Isn't the effect of this change to keep people from having overtime? I don't think it is, Your Honor, and I certainly don't think that if you wanted to get into the effect of the change as correlating to the requirements of the Overtime Act, number one, I don't think that that link has been adequately pled in the complaint, but regardless, this is one employee who works in one portion of this company who just so happens that his workweek, because he's a temporary employee, has been changed to be consistent with the workweek of all other employees, and that had the effect on this employee of not allowing him to earn as much overtime. He still may earn overtime. I think that's yet to be determined. He still may work more than 40 hours in the newly established workweek. There certainly are other employees of the corporation who very well may be working more than 40 hours in the established workweek. As long as the company is paying those employees for any additional time worked over 40 hours at the rate of time and a half, that is consistent with the overtime requirements. And I think the case, Your Honor, that you mentioned, the city of Rome case, is a perfect example of that. In that case, the employer, the fire department, had changed the structure of the workweek so that the employees were working 24 hours and 15 minutes in each shift, because they had them do their change of clothes and whatnot, and that took the additional 15 minutes. But because of the way that they had structured the workweek, that extra 15 minutes, although it was 15 minutes longer than they previously had to work under the old regime, was not being compensated. Of course, we all know that the federal cases only, if they're recorded, they only have persuasive authority as far as this court is concerned. Are you also in the predicament that you have found no Illinois cases that are on point, as your counsel has indicated? Absolutely. There are very few cases on point, Your Honor. I think because of the guidance of the Department of Labor, established that this is a perfectly permissible practice. As long as, for instance, if an employer was changing the workweek every other week to, you know, accommodate certain things that were going on in the company's business and make sure that, you know, it was a frequent change so that one week they only worked 40 hours, the next week they might work 60 hours, but then they changed that workweek to be 40 hours as well. If it was a frequent change like that, that would be violating the overtime requirements because they are putting in place a plan that will deprive the employees of being paid for the overtime that they earned under their established workweek. But as long as the workweek is established and it's intended to be permanent and it applies across the board to all employees at the same level, that does not violate the overtime requirements of the Act. We do believe that there are a few analogous cases in situations that are older cases, but that were analogous and I think the courts had articulated certain concepts that are applicable here. Again, there are very few cases that have looked at this issue. But the Harned v. Atlas Powder case, there the plaintiff employee had urged the court to accept his definition of the workweek rather than the workweek that had been put in place by the employer. That would have resulted in the employee being owed substantial overtime. In ruling for the employer, however, the court said that an employer is entitled, I'm sorry, before an employee is entitled to overtime, he must labor 40 hours during the workweek established by the company. Even though this person worked seven days in a row, five of those days were in one workweek and the next two days had fallen into the next workweek. And he claimed a workweek should be a consecutive seven-day period in which I work. And because I worked over 40 hours during that consecutive seven-day period, I should be paid overtime for those additional two days. And the court rejected that notion and said no, the company has established a workweek. That workweek happens to have five of the seven consecutive days that you work fall into one workweek and the other two days fall into the next. And even though that deprives you from the additional, you know, 20 or 40 hours that you may work in those other two days, that's permissible because you have to work 40 hours in the established workweek. And I think, you know, those comments by the court, there were similar comments echoed by the Adams Court and there were even similar comments echoed in the City of Rome Firefighters Court by that court. All of those courts recognized that an employer has an absolute right to change a workweek as long as it's intended to be permanent and as long as it doesn't evade the overtime requirements. And the requirements are very different from inability to earn overtime. There is no requirement for an employer to set the workweek that will maximize the overtime that an employee can earn. There's only a requirement that the employer pay that employee for any overtime earned during the established workweek. The counsel for the plaintiffs appears to be suggesting that this, the specific facts involved here create kind of a nuance that we should consider. I would reject that, Your Honor, for a couple of reasons. Number one, I don't know that there can be a, you know, interpretation of statutory law that can be applied on an ad hoc basis like that. I think there has to be a consistent interpretation of the Federal Labor Standards Act and the Illinois Wage Payment and Collection Act. And I think that those acts have to be applied as they are written. And I think we have to give meaning to the words that were chosen in that statute. If the intent of those statutes were to prevent an employer from changing a workweek to avoid or prohibit an employee being able to earn as much overtime as he or she was able to earn under the prior workweek, they would have stated that. It's a very simple thing to state in the act. But, you know, as you pointed out, Your Honor, there are economic circumstances that different employers have to take into account. And those economic circumstances can range from a struggling company trying to figure out ways to stay in business and continue to employ the employees that it currently has and reducing its expenses. And it can range to administrative issues where if a new company comes in, such as Illinois Speedway, and takes over tracks, they don't want, from an administrative HR standpoint, several different pay periods by which they have to be doing different payrolls, keeping track of whose work weekends when, when that payroll period must be paid. It's perfectly logical that a company who comes in and takes over a new business, whether it's a subsidiary business, a racetrack in this case, whatever it might be, would want to standardize things to make sure that the entire company is standardized from an HR payroll perspective. So there's a number of reasons why a company may want to make a change to the workweek. But, you know, that's getting far beyond what either was alleged in the complaint or what I don't think that the intent or the purpose for the change is even relevant here. As long as it does not evade the overtime requirements that the company is paying what is due when the company, when the employees work over 40 hours in a workweek, and as long as that workweek change was intended to be permanent. And as they allege in the complaint, it clearly was. It was made upon Illinois Speedway coming in and taking over the racetrack and has remained today. So, you know, that's four years later. It's still the same workweek. And so clearly it was a permanent change. It does not evade the overtime requirements. There is no allegation before your honors that the company did not pay for overtime that had been earned under a workweek that had been established. And therefore, we believe that the company has met the requirements of the Fair Labor Standards Act and the Illinois equivalent. Thank you, counsel. Thank you. Brief rebuttal. Thank you, your honors. Brief rebuttal. The cases that the defense relies on do not provide for an absolute right to change the workweek. They stand for the proposition that they have an absolute right to set the workweek, to which I agree. I heard moments ago that there might be legitimate business reasons for changing the workweek, like a variety of pay periods being standardized. That's new. It might even be valid, but it would not support the dismissal under 2615 as a matter of law. That would seem to me to get into a factional inquiry as to why the change was made. I would like to spend a minute with the Rome case, too, because the Rome case does in fact the city candidly admits that the only reason for the extension was to take advantage of the provisions allowing deduction of the eight hours per shift from hours worked so as to avoid overtime payments. This motive in itself is not improper. Now, they say that, but I would ask the court to see to actually look at what the court does after that. What the defense did there was if you're a firefighter in Rome, Georgia, and you work 24 hours, you get paid for eight hours of sleep time. If you add 15 minutes, which is what the defense did, or the defendant did, then it's more than 24 hours, and they don't have to pay the eight hours of overtime for sleep. But the court did a couple of things. They said, one, you've got to pay them for the 15 minutes, because they were even trying to get out of that on the ground that it was a de minimis addition to the tour, and so they could add the 15 minutes to take advantage of more than 24, and then not pay for it besides. And then the court said, and you don't have to pay for the eight hours of overtime for sleeping since it's more than 24 hours so long as you have an express agreement with the employees for that. So the truth of the matter is, they added 15 minutes. They didn't save any overtime because the court found there was no agreement for the eight-hour pass that the defense had asked for. Basically, they got caught trying to run a scheme on the firefighters. I would say to the court. There was different statutory provisions. That's right. That we don't have here. That's right. But the point, I think, is the court, while it did lip service to say avoiding overtime is a legitimate reason to change the work week, didn't do that in its opinion. That's what I think is critical to the Rome decision. If you have two competitors, they're fighting, you know, they sell competing goods. One competitor can try and get a leg up on the other by increasing his marketing, by cutting his prices, or by blowing the guy's factory up. Two are legal. One is not. Changing the work week to duck overtime is not. Thank you. Thank you, counsel. This matter will be taken under advisement.